1

2

3

4

5

6    TERESA A. SHERMAN
     Attorney for Plaintiff
7    Paukert & Troppmann, PLLC
     522 W. Riverside Avenue, Suite 560
8    Spokane, WA 99201
     509-232-7760
9    Fax: 509-232-7762

10                        UNITED STATES DISTRICT COURT,

11                       WESTERN DISTRICT OF WASHINGTON

12

13   PROVIDENCE REGIONAL MEDICAL CENTER – )
     EVERETT                             )    No.
14   1321 Colby Avenue                   )
     Everett, WA 98201;                  )    COMPLAINT FOR JUDICIAL
15                                        )    REVIEW UNDER THE MEDICARE
                                          )    ACT
16   PROVIDENCE ALASKA MEDICAL CENTER     )
     3200 Providence Drive               )
17   Anchorage, AK 99508;                )
                                          )
18                                        )
     PROVIDENCE ST. PETER HOSPITAL        )
19   413 Lilly Road                      )
     Olympia, WA 98506;                  )
20                                        )
                                          )
21   SWEDISH HEALTH SERVICES dba          )
     SWEDISH MEDICAL CENTER - CHERRY HILL )
22   500 17ᵗʰ Avenue                     )
     Seattle, WA 98122;                  )
23                                        )
                                          )
24                                        )
                                          )
25                                        )
     ─────────────────────────────────── )
26

27

28

29   Complaint:  Page 1

SWEDISH HEALTH SERVICES dba )
SWEDISH EDMONDS HOSPITAL )
21601 76th Avenue W. )
Edmonds, WA 98026; )
)
SWEDISH HEALTH SERVICES dba )
SWEDISH MEDICAL CENTER )
747 Broadway )
Seattle, WA 98122 )
)
PROVIDENCE SACRED HEART MEDICAL )
CENTER )
101 West 8th Avenue )
Spokane, WA 99204; )
)
PROVIDENCE HOLY FAMILY HOSPITAL )
5633 N. Lidgerwood St. )
Spokane, WA 99208; )
)
PROVIDENCE LITTLE COMPANY OF MARY )
MEDICAL CENTER - SAN PEDRO )
1300 W. 7th Street )
San Pedro, CA 90732; )
)
PROVIDENCE ST. JOSEPH MEDICAL CENTER )
501 S. Buena Vista Street )
Burbank, CA 91505; )
)
PROVIDENCE HOLY CROSS MEDICAL CENTER )
15031 Rinaldi Street )
Mission Hills, CA 91345; )
)
PROVIDENCE LITTLE COMPANY OF MARY )
MEDICAL CENTER TORRANCE )
4101 Torrance Blvd. )
Torrance, CA 90503; )
)
PROVIDENCE ST. VINCENT MEDICAL )
CENTER; )
9205 SW Barnes Rd. )
Portland, OR 97225; )

Complaint:  Page 2

PROVIDENCE PORTLAND MEDICAL CENTER )
4805 NE Gilsan St. )
Portland, OR 97213; )
)
PROVIDENCE ST. MARY MEDCIAL CENTER )
401 W. Poplar St. )
Walla Walla, WA 99362; )
)
PROVIDENCE TARZANA MEDICAL CENTER )
18321 Clark St. )
Tarzana, CA 91356; )
)
PROVIDENCE ST. PATRICK HOSPITAL )
500 W. Broadway St. )
Missoula, MT 59802; )
)
PROVIDENCE NEWBERG MEDICAL CENTER )
1001 Providence Dr. )
Newberg, OR 97132; )
)
PROVIDENCE WILLAMETTE FALLS MEDICAL )
CENTER )
1500 Division St )
Oregon City, OR 97045; )
)
PROVIDENCE MEDFORD MEDICAL CENTER )
1111 Crater Lake Ave. )
Medford, OR 97504; )
)
KADLEC REGIONAL MEDICAL CENTER )
888 Swift Boulevard )
Richland, WA 99352; )
)
SWEDISH HEALTH SERVICES dba SWEDISH )
ISSAQUAH HOSPITAL )
751 NE Blakely Dr. )
Issaquah, WA 98029; )
)
PROVIDENCE MILWAUKIE HOSPITAL )
10150 SE 32nd Avenue )
Milwaukie, OR 97222; )

Complaint:  Page 3

MULTICARE HEALTH SYSTEM dba )
GOOD SAMARITAN HOSPITAL )
401 15th Ave. SE )
Puyallup, WA 98372; )
)
MULTICARE HEALTH SYSTEM dba )
TACOMA GENERAL ALLENMORE )
HOSPITAL; )
315 Martin Luther King Jr. Way )
Tacoma, WA 98405; )
)
MULTICARE HEALTH SYSTEMS dba )
AUBURN MEDICAL CENTER )
202 N. Division St. )
Auburn, WA 98001; )
)
UNIVERSITY OF WASHINGTON )
MEDICAL CENTER )
1959 NE Pacific Street )
Seattle, WA 98195; )
)
HARBORVIEW MEDICAL CENTER )
325 Ninth Avenue )
Seattle, WA 98104; )
)
VALLEY MEDICAL CENTER )
400 S. 43rd Street )
Renton, WA 98055. )
)
           Plaintiffs, )
)
    vs. )
)
NORRIS COCHRAN )
Acting Secretary of the United States Department of )
Health and Human Services )
)
          Defendant )
)
_____ )

Complaint:  Page 4

The above-named Plaintiffs, by and through their undersigned counsel, state the following in the form of this Complaint against NORRIS COCHRAN, Acting Secretary of the United States Department of Health and Human Services (the "Secretary"):

## I.  INTRODUCTION

1.      Plaintiffs (also referred to hereinafter as the "Hospitals") were, at all relevant times, hospitals participating in the Medicare and Medicaid programs.  The Hospitals challenge the Secretary's policy of treating patient days for which no payment was received under Medicare Part A as nonetheless "entitled to benefits under part A" for purposes of calculating both fractions of the Disproportionate Share Hospital ("DSH") payment adjustment.  *See* 42 U.S.C. §1395ww(d)(5)(F)(vi) (the "Medicare DSH Statute").  If the Secretary's treatment of unpaid Part A days as "days entitled to benefits under part A" is upheld, the Hospitals contend that the Secretary must at least apply that interpretation of the word "entitled" consistently by also treating days for which no supplemental security income payments were received as days "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

As explained below, the Secretary's policy of applying different interpretations to the same term, "entitled," used in the same sentence of the statute is the epitome of arbitrary and capricious agency action and must be reversed.  *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 20 n.1 (D.C. Cir. 2011) (Kavanaugh, J., concurring) ("HHS thus interprets the word "entitled" differently within the same sentence of the statute.  The only thing that unifies the Government's inconsistent definitions of this term is its apparent policy of paying out as little money as possible.  I appreciate the desire for frugality, but not in derogation of law."); *see also Walter O.*

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

*Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 799 (D.C. Cir. 1984) ("It would be arbitrary and capricious for [the Secretary] to bring varying interpretations of the statute to bear, depending upon whether the result helps or hurts Medicare's balance sheets . . . . ").

## II.  JURISDICTION AND VENUE

2.      This action arises under Title XVIII of the Social Security Act, as amended ("Medicare Act") (42 U.S.C. §§1395 et. seq.), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 et seq.

3.      This Court has jurisdiction under 42 U.S.C. §1395oo(f)(1), to review a final decision of the Provider Reimbursement Review Board ("PRRB").  The final decisions of the PRRB, granting expedited judicial review in part, and denying jurisdiction for expedited judicial review in part, were issued in five (5) separate written decisions: (1) PRRB Case No. 16-0605GC dated November 30, 2020; (2) PRRB Case No. 15-0929GC dated November 30, 2020; (3) PRRB Case Nos. 15-1791GC, 15-1800GC, 15-1805GC, 16-1991GC, 15-1294GC, 15-0433GC, 17-0950GC, 15-0790GC, and 17-0958GC dated November 30, 2020; (4) PRRB Case Nos. 14-2924GC, 15-0932GC, 15-1677GC, 17-0955GC, and 18-0680GC dated November 30, 2020; and (5) PRRB Case Nos. 17-1553GC, 18-0678GC, and 181110GC dated December 18, 2020, copies of which are attached hereto as Exhibits A-E.  Each of the decisions involve the same legal issues and are related.  This action is filed within sixty (60) days of such decisions and is therefore timely pursuant to 42 U.S.C. §1395oo(f)(1) and 42 C.F.R. §405.1801.

4.      Pursuant to 42 U.S.C. §1395oo(f)(1), venue is proper in the judicial district in which the greatest number of providers are located or the District Court for the District of

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

Columbia.  The providers in this case are spread throughout Washington, Oregon, Alaska, Montana and California. The greatest number of providers are located in the judicial district for Western Washington.  The judicial district for Western Washington is therefore a proper venue and is also the venue of two related cases involving some of the same Hospitals and similar issues: Case No. 3:18-cv-05731-RJB filed on September 7, 2018 and Case No. 2:18-cv-01612-RJB filed on November 5, 2018.

### III.  PARTIES

5.      The Plaintiffs in this action are:

(1)      Providence Regional Medical Center – Everett, Everett, Washington, Medicare provider number 50-0014;

(2)      Providence Alaska Medical Center, Anchorage, Alaska, Medicare provider number 02-0001;

(3)      Providence St. Peter Hospital, Olympia, Washington, Medicare provider number 50-0024;

(4)      Swedish Health Services dba Swedish Medical Center – Cherry Hill, Seattle, Washington, Medicare provider number 50-0025;

(5)      Swedish Health Services dba Swedish Edmonds Hospital, Edmonds, Washington, Medicare provider number 50-0026;

(6)      Swedish Health Services dba Swedish Medical Center, Seattle, Washington, Medicare provider number 50-0027;

Complaint:  Page 7

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

(7)     Providence Sacred Heart Medical Center, Spokane, Washington, Medicare provider number 50-0054;

(8)     Providence Holy Family Hospital, Spokane, Washington, Medicare provider number 50-0077;

(9)     Providence Little Company of Mary Medical Center - San Pedro, San Pedro, Los Angeles, California, Medicare provider number 50-0078;

(10)    Providence St. Joseph Medical Center, Burbank, Los Angeles, California, Medicare provider number 50-0235;

(11)    Providence Holy Cross Medical Center, Mission Hills, Los Angeles, California, Medicare provider number 50-0278;

(12)    Providence Little Company of Mary Medical Center Torrance, Torrance, California, Medicare provider number 50-0353;

(13)    Providence St. Vincent Medical Center, Portland, Oregon, Medicare provider number 38-0004;

(14)    Providence Portland Medical Center, Portland, Oregon, Medicare provider number 38-0061;

(15)    Providence St. Mary Medical Center, Walla Walla, Washington, Medicare provider number 50-0002;

(16)    Providence Tarzana Medical Center, Tarzana, Los Angeles, California, Medicare provider number 05-0761;

Complaint:  Page 8

(17)    Providence St. Patrick Hospital, Missoula, Montana, Medicare provider number 27-0014;

(18)    Providence Newberg Medical Center, Newberg, Oregon, Medicare provider number 38-0037;

(19)    Providence Willamette Falls Medical Center, Oregon City, Oregon, Medicare provider number 38-0038;

(20)    Providence Medford Medical Center, Medford, Oregon, Medicare provider number 38-0075;

(21)    Kadlec Regional Medical Center, Richland, Washington, Medicare provider number 50-0058;

(22)    Swedish Health Services dba Swedish Issaquah Hospital, Issaquah, Washington, Medicare provider number 50-0152;

(23)    Providence Milwaukie Hospital, Milwaukie, Oregon, Medicare provider number 38-0082;

(24)    MultiCare Health System dba Good Samaritan Hospital, Puyallup, Washington, Medicare provider number 50-0079;

(25)    MultiCare Health System dba Tacoma General Allenmore Hospital, Tacoma, Washington, Medicare provider number 50-0129;

(26)    MultiCare Health System dba Auburn Medical Center, Auburn, Washington, Medicare provider number 50-0015;

Complaint:  Page 9

(27)    University of Washington Medical Center, Seattle, Washington, Medicare provider number 50-0008;

(28)    Harborview Medical Center, Seattle, Washington, Medicare provider number 50-0064;

(29)    Valley Medical Center, Renton, Washington, Medicare provider number 50-0088;

6.    Defendant, NORRIS COCHRAN is the Acting Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, the federal agency responsible for the administration of the Medicare and Medicaid Programs. Defendant COCHRAN is sued in his official capacity.  References to the Secretary herein are meant to refer to him, to his subordinates, and to his official predecessors or successors as the context requires.

7.    The Center for Medicare and Medicaid Services ("CMS") is a component of the Department of Health and Human Services ("HHS") with responsibility for day-to-day operations and administration of the Medicare program.  References to CMS herein are meant to refer to the agency and its predecessors or successors.

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

## IV.  THE MEDICARE PROGRAM

8.      Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a public health insurance program that furnished health benefits to the aged, blind and disabled.  Over the years, the scope of benefits and covered individuals has been expanded.

9.      Among the benefits covered by Medicare are inpatient hospital services.  For cost reporting years beginning prior to October 1, 1983, the Medicare Program reimbursed inpatient hospital services on a "reasonable cost" basis.  42 U.S.C. §1395f(b).  Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most acute care hospitals, including Plaintiffs, for inpatient operating costs.  42 U.S.C. §1395ww(d).  Under PPS, hospitals are paid a fixed amount for services rendered based upon diagnosis-related groups ("DRGs"), subject to certain payment adjustments, such as the DSH payment at issue here.

10.     The Secretary has delegated much of the responsibility for administering the Medicare Program to CMS.  The Secretary, through CMS, contracted out many of the audit and payment functions for inpatient hospital care furnished to Medicare program beneficiaries to organizations known as fiscal intermediaries or Medicare administrative contractors ("Medicare contractor").  42 U.S.C. §1395h.

11.     At the close of the fiscal year, a hospital provider of services must submit to its Medicare contractor a cost report showing the allowable costs incurred and amounts due from Medicare for the fiscal year and the payments received from Medicare.  The Medicare contractor

Complaint:  Page 11

is required to audit the cost report and inform the hospital provider of a final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR").  42 CFR §405.1803.

12.    A hospital provider dissatisfied with its Medicare contractor's determination may file an appeal to the Provider Reimbursement Review Board ("PRRB") as long as the amount in controversy is $10,000 ($50,000 for group appeals) or more and the request for hearing is within 180 days of the date the hospital provider receives the NPR.  42 U.S.C. §1395oo(a).  The PRRB was established by the Social Security Amendments of 1972 (Pub. L. 92-603) as a national, independent forum for hearing and deciding payment disputes between hospital providers and their Medicare contractors.

13.    Upon filing a timely hearing request, a hospital provider may add specific Medicare payment issues to the original hearing request by submitting a written request to the PRRB within no later than 60 days after the expiration of the applicable 180-day period to file the initial hearing request.  42 C.F.R. §405.1835(e).

14.    Pursuant to PRRB Rule 16 a hospital provider may transfer a specific issue from an individual appeal to an existing group appeal when there is a single common issue to be resolved.  The PRRB Rules set out the documentation requirements for such a transfer.

15.    The decision of the PRRB is a final administrative decision, unless the Secretary, through the Administrator of CMS, reviews the PRRB's decision; the Administrator may reverse, affirm or modify the PRRB's decision.  42 U.S.C. §1395oo(f).  When the PRRB grants a hospital provider's request for expedited judicial review ("EJR") because it has jurisdiction over

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

an appeal but lacks the authority to grant the relief requested, the Administrator of CMS may only review the jurisdictional component of the PRRB's EJR decision.  The Administrator of CMS may not review the PRRB's determination of its authority to decide the legal question.  42 C.F.R. §405.1842(g)(1)(i) and (ii).

16.    A hospital provider has the right to obtain judicial review of any final decision of the PRRB, or of the Secretary, by filing a civil action within 60 days of the date on which notice of any final decision by the PRRB, or of any reversal, affirmance, or modification by the Secretary, is received.  42 U.S.C. §1395oo(f).  Pursuant to 42 C.F.R. §405.1801 the date of receipt for a decision of the PRRB is presumed to be 5 days after the date of issuance of such decision.  If the PRRB grants EJR, the hospital provider may file a complaint in Federal district court in order to obtain review of the legal question.  42 C.F.R. §405.1842(g)(2).

## V.  THE MEDICARE DISPROPORTIONATE SHARE PAYMENT ADJUSTMENT

17.    In 1986, Congress amended Title XVIII of the Social Security Act to require the Secretary to make additional payments to hospitals that serve "a significantly disproportionate number of low-income patients . . . " 42 U.S.C. §1395ww(d)(5)(F)(i)(I).  Eligibility for these "disproportionate share" (DSH) payments, and the level of these payments, is based on the calculation of a "disproportionate share percentage" that considers the number of low-income patients a hospital serves.  See 42 U.S.C. §§1395ww(d)(5)(F)(v) and (vi).

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

18.     As the Ninth Circuit observed in *Portland Adventist Medical Ctr. v. Thompson*, 399 F.3d 1091, 1095 (9th Cir. 2005) (quoting *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996)):

> Congress "overarching intent" in passing the [Medicare] disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low income" persons . . . Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low-income patients.

19.     To be eligible for the DSH payment, a hospital must meet certain systemic criteria, including a disproportionate patient percentage that exceeds the threshold.  The amount of the DSH payment then depends upon the extent to which the disproportionate patient percentage exceeds the threshold.

20.     The disproportionate patient percentage is statutorily defined as the sum of two fractions expressed as a percentage for a hospital's cost reporting period.  These fractions are commonly known as the "SSI fraction" and the "Medicaid fraction," respectively, and are defined as follows:

> (I)     The fraction (expressed as a percentage) the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such dates) were *entitled* to benefits under part A of this title and were *entitled* to supplemental security income benefits (excluding any State supplementation) under title XVI of this Act, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled* to benefits under part A of this title,

> . . .

> (II)     The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible* for medical assistance under a State plan approved under title XIX of this chapter, but who were not *entitled* to

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

benefits under part A of this title, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi) (emphasis added).

21.    As set forth in the statutory language above, the numerator of the Medicaid fraction consists of days of patients who were both *eligible* for medical assistance under Title XIX, or Medicaid, and *not entitled* to benefits under Part A of Title XVII, or Medicare.  The denominator for the Medicaid fraction is the hospital's total patient days for the period.  The statutory language defines the SSI fraction as consisting solely of days for patients who were "*entitled* to benefits under part A" of Medicare.  The denominator of the SSI fraction includes all Part A days, and the numerator includes only those Part A days for patients who are also *entitled* to social security income ("SSI") benefits.

22.    The Secretary implemented the Medicare DSH provisions through 42 C.F.R. § 412.106.  The portion of the regulation which applies to the SSI fraction, prior to the change in language in 2008, states:

(b)    *Determination of a hospital's disproportionate patient percentage-*
(1)    *General Rule.*  A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.
(2)    *First computation:  Federal fiscal year.*  For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-
　　　(i)    Determines the number of **covered** patient days that-
　　　　　(A)    Are associated with discharges occurring during each month; and
　　　　　(B)    Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;
　　　(ii)    Adds the results for the whole period; and

Complaint:  Page 15

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

(iii)    Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-
    (A)    Are associate with discharges that occur during that period; and
    (B)    Are furnished to patients entitled to Medicare Part A.

(emphasis added to the word "**covered**").  The change to the regulation which first appeared in the 2008 regulations, but allegedly effective October 1, 2004, omits the word "covered":

(b)    *Determination of a hospital's disproportionate patient percentage-*
(1)    *General Rule.*  A hospital's disproportionate patient percentage is determined by adding the results of two computations and expressing that sum as a percentage.
(2)    *First computation:  Federal fiscal year.*  For each month of the Federal fiscal year in which the hospital's cost reporting period begins, CMS-
    (i)    Determines the number of patient days that-
        (A)    Are associated with discharges occurring during each month; and
        (B)    Are furnished to patients who during that month were entitled to both Medicare Part A and SSI, excluding those patients who received only State supplementation;
    (ii)    Adds the results for the whole period; and
    (iii)    Divides the number determined under paragraph (b)(2)(ii) of this section by the total number of patient days that-
        (A)    Are associate with discharges that occur during that period; and
        (B)    Are furnished to patients entitled to Medicare Part A.

23.    The Secretary acquiesced to the D.C. Circuit's decision in *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014) ("*Allina*") that the rulemaking process associated with the Part C days provision in 42 C.F.R. § 412.106 violated the APA.  Since all hospitals have recourse to the D.C. Circuit for their Medicare reimbursement appeals, the Secretary conceded that "the 2004 Final Rule has ceased to exist."  *See* Def's Response to the Court's Sept. 29, 2014 Minute Order at 2, *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75 (D.D.C. 2012), *aff'd in part, rev'd in part*, 746 F.3d at 1111 (No. 1:14-cv-01415-RMC), ECF No. 13  ("Because the D.C.

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

Circuit upheld [the vacat[ur] of the 2004 Final Rule] . . ., the 2004 Final Rule has ceased to exist"); *see also* 42 U.S.C. §1395hh(a)(4) (stating that when a final Medicare rule is not the logical outgrowth of a proposed rule that it "shall be treated as a proposed regulation and shall not take effect until there is the further opportunity for public comment and a publication of the provision again as a final regulation").

Despite objections and similar errs in the rulemaking process associated with the Part A provisions of the same regulation, the Secretary continues to consider an individual to be "entitled to benefits under Part A," regardless of whether the days were "covered" or not "covered" by Medicare Part A.  In other words, it is the Secretary's policy that all non-covered categories of Medicare Part A days – for example, days for which Part A benefits have been exhausted, days for which payment was made under Part C and not Part A, and days for which Medicare Part A was a secondary payor and therefore made no payments, are included in the SSI fraction and, even if the patient is Medicaid eligible, excluded from the Medicaid fraction.

24.     Despite the Secretary's policy of treating unpaid Part A days as days entitled to benefits under Part A, CMS has at all times required that a beneficiary be paid SSI benefits (or "covered" by SSI) during the period of his or her hospital stay in order for such days to be included in the numerator of the SSI fraction as a day "entitled to supplemental security income benefits."  The Secretary, therefore, does not include days in the numerator of the SSI fraction when individuals were eligible for SSI but did not receive SSI payment during their hospitalization for such reasons as failure of the beneficiary to have a valid address, representative payee problems, Medicaid paying for more than 50% of the cost of care in a

Complaint:  Page 17

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

medical facility, or the period of hospitalization is during the first month of eligibility before a cash payment is made. This policy ultimately reduces the Secretary's DSH payment obligation, as does the Secretary's wholly inconsistent policy of treating unpaid Part A days as days entitled to benefits under Part A.

25.     In sum, the Secretary contends that "the phrase 'entitled to benefits under part A' applies to all individuals who meet the statutory criteria in 42 U.S.C. § 426(a) and (b) for receiving 'hospital insurance benefits under Part A,'" *Northeast Hosp. Corp.*, 657 F.3d at 20 n.1, but does not interpret the analogous phrase "entitled to supplemental security income benefits" as encompassing all individuals who meet the statutory criteria in 42 U.S.C. § 1382(a) for receiving supplemental security income benefits. Because these contradictory interpretations reduce the Secretary's DSH payment obligation, they can only be reconciled with the Secretary's interest in "paying out as little money as possible." *Id.* The Secretary has, therefore, arbitrarily and capriciously adopted two conflicting interpretations of the same word in the same sentence.

## VI. THE HOSPITALS' ADMINISTRATIVE APPEALS

26.     During the process of settling cost reports for the cost reporting periods at issue, the Medicare contractors issued NPRs based upon the policy of treating patient days for which no payment was received under Medicare Part A as nonetheless "entitled to benefits under part A" for purposes of calculating both fractions of the DSH payment adjustment. At the same time, the Medicare contractors treated days for which no supplemental security income payments were

Complaint:  Page 18

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

received as days <u>not</u> "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).

27.    Each of the Hospitals timely filed appeals with the PRRB and appropriate group appeals were formed.  The amounts in controversy for each of the groups exceeds $50,000 as required for group appeals.  Requests for expedited judicial review ("EJR") were submitted to the PRRB based upon the PRRB's lack of authority to determine the validity of the challenged regulation.

28.    Although the PRRB's response to the EJR requests were delayed due to the effect of COVID-19 on PRRB operations (Board Alert 19 dated March 26, 2020), the Board has now granted EJR for each of the group appeals by decisions dated November 30, 2020 and December 18, 2020.  In four of the five decisions the PRRB determined it was without authority to decide the legal question of whether 42 C.F.R. § 412.106(b)(2)(i) codifying the Medicare dual eligible days policy adopted in the FY 2005 IPPS final rule is valid and to provide the requested relief that no-pay dual eligible days be "excluded from both the numerator and the denominator of the SSI percentage factor in the Medicare DSH formula."  These decisions limit the scope of EJR to the Medicare (SSI) fraction, striking the Hospitals' requested relief related to additionally including the non-covered days in the Medicaid fraction where the patients are eligible for Medicaid.

In one decision for PRRB Case Nos. 14-2924 GC, 15-0932GC, 15-1677GC, 17-0955GC, and 18-0680GC the PRRB determined it was without legal authority to determine the validity of the same final rule and the relief requested that "non-covered patient days should be included in

Complaint:  Page 19

the denominator of the Medicaid fraction, and that where a patient is eligible for Medicaid, non-covered days belonging to that patient should be included in the numerator of the Medicaid Fraction." See PRRB decisions attached as Exhibits A-E.

29.     The PRRB decisions dismissed the Hospitals' alternative request for relief. The Hospitals' requests for EJR contend that it is impermissibly inconsistent to include unpaid (i.e., non-covered days that are not paid by Medicare) in the denominator of the Medicare fraction while excluding eligible but unpaid SSI days in the numerator of the Medicare fraction. The PRRB considered this a separate issue that was improperly added to the appeal.

30.     The PRRB also found it lacked jurisdiction for certain Hospitals, for certain cost reporting periods, based upon minor discrepancies in documentation related to statement of the issue in initial appeals, letter of representation, and the delivery or timeliness of notifications to the PRRB.

## VII. ASSIGNMENT OF ERRORS

31.     The applicable provisions of the APA provide that the "reviewing court shall … hold unlawful and set aside agency action … found to be…(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. §706(2).

Complaint:  Page 20

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

32.    The Secretary's determination to treat days for which no Part A payments were made as nonetheless "entitled to benefits under part A" is arbitrary and capricious and otherwise contrary to law because it is:

a)    inconsistent with the plain language of the Medicare statute and conflates the statutory term "entitled" with the statutory term "eligible";

b)    inconsistent with the plain language of the controlling pre-2004 regulation, which explicitly included only "covered," i.e., "paid," Part A days and that pre-2004 is controlling since the 2004 regulation was procedurally and substantively invalid;

c)    inconsistent with the Secretary's longstanding interpretation of "entitled to benefits under Part A" to mean "entitled to payment under Part A," *see* 55 Fed. Reg. 35990, 35996 ("entitle[ment] to benefits under part A" ceases when "[e]ntitlement to payment under part A ceases"); and

d)    inconsistent with the Secretary's longstanding interpretation of "entitled to supplemental security income benefits" as including only SSI days for which payment was actually made, *see, e.g.,* 75 Fed. Reg. 50042, 50280 (Aug. 16, 2010) (stating that "[e]ntitlement to" receive SSI benefits [requires that an individual] 'be paid benefits by the Commissioner of the Social Security' . . . .").

33.    The Secretary's interpretation of "entitled to supplemental security income benefits" under 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) as including only days for which actual SSI payments were made is arbitrarily and capriciously inconsistent with the policy described above of treating *un*paid Part A days as "entitled to benefits under part A" and arbitrarily assigns two

Complaint:  Page 21

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

different meanings to the same term "entitled."

In addition, because the purpose of the DSH adjustment is to provide additional payment to hospitals that incur higher costs in treating low-income patients, an agency interpretation that does not take into account SSI payment status codes associated with *eligible* SSI individuals is also unreasonably and impermissibly inconsistent with the legislative history and purpose of the Medicare DSH Statute.

34.    The PRRB decision granting EJR unnecessarily and arbitrarily restricts the issues to be considered by the Court and appropriate relief available to the Hospitals.

35.    The PRRB findings that it is without jurisdiction for certain Hospitals, for certain cost reporting periods, is contrary to the provisions of the regulations and rules and is otherwise arbitrary.

36.    For the reasons set forth above, the Secretary's amendment of the regulation, and policy in its application, conflicts with the Medicare DSH Statute and is otherwise arbitrary and capricious, as well as an abuse of discretion.

WHEREFORE the Hospitals request an order:

(a)    Declaring this Court has jurisdiction over all of the Hospitals for all of the included cost reporting periods to grant the relief requested herein;

(b)    Declaring invalid and enjoining the Secretary from applying the policy that unpaid Medicare Part A days are "days entitled to benefits under part A" for purposes of the DSH SSI and Medicaid fractions and thereby excluding such days from the SSI fraction and

**Paukert & Troppmann, PLLC**
522 W Riverside Ave Ste 560
Spokane, WA 99201
(509) 232-7760

including such days in the numerator of the Medicaid fraction to the extent the patients are eligible for Medicaid, or, in the alternative, directing the Secretary to include unpaid SSI eligible patient days in the numerator of the SSI percentage utilizing SSI payment status codes that reflect the individuals' eligibility for SSI – even if the individuals did not receive SSI payments;

(c)     Directing the Secretary to calculate the Plaintiff Hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due to the Plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. §1395oo(f)(2); and

(d)     For Plaintiffs' costs and reasonable attorney's fees, and for such other and further relief as the Court deems appropriate.

Dated this 29th day of January, 2021.

PAUKERT & TROPPMANN, PLLC

By:___/s/_____Teresa A. Sherman_____
    TERESA A. SHERMAN
    WSBA No. 14637
    Attorney for Plaintiffs
    Paukert & Troppmann, PLLC
    522 W. Riverside Avenue, Suite 560
    Spokane, WA 99201
    Telephone: (509) 232-7760
    Fax: (509) 232-7762
    Email: tsherman@pt-law.com

Complaint: Page 23